UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
----------------------------
In Re                       )
WAYNE ERIC PUFFER,          )      Ch. 13 No. 08-30290-HJB
        Debtor              )
----------------------------
L. JED BERLINER, ESQ.,      )
        Appellant           )
                            )
              v.            )      C.A. No. 10-cv-30225-MAP
                            )
DENISE M.                   )
PAPPALARDO, ESQ.,           )
        Appellee            )
----------------------------
```

MEMORANDUM AND ORDER REGARDING
BANKRUPTCY APPEAL
(Dkt. No. 1)

July 8, 2011

PONSOR, D.J.

## I.    INTRODUCTION

Appellant Attorney L. Jed Berliner appeals from the bankruptcy court's ruling disallowing his claim for attorney's fees and expenses (other than Debtor's filing fee) in connection with his representation of Wayne Eric Puffer ("Debtor" or "Mr. Puffer").  The appeal raises an issue regarding Chapter 13 that has generated substantial decisional law, mostly adverse to the appellant here.  For the reasons stated below, the court will affirm the bankruptcy court's ruling.

## II. BANKRUPTCY PROCEEDING

When Appellant filed his fee application in this matter, the bankruptcy judge ruled as follows:

> For the reasons set forth in In re Buck, 432 B.R. 13 (Bankr. D. Mass. 2010), the Application is allowed only in the amount of $299.00, and Attorney Berliner is ordered to remit to the Debtor the remainder of any payments received by him within 30 days of the entry of this order.

(Dkt. No. 1, Ex. 1.)   The issue before this court is whether the bankruptcy court erred when it adopted its previous ruling that "Chapter 13 plans in which all or virtually all of the funds to be distributed are paid only to Debtors' counsel unquestionably fail to meet any fair interpretation of the term 'good faith' in §§ 1325(a)(3) and (7), respectively."   In re Buck, 432 BR. 13, 22 (Bankr. D. Mass. 2010).   See 11 U.S.C. §§ 1325(a)(3), (a)(7) ("[T]he court shall confirm a plan if . . . (a)(3) the plan has been proposed in good faith [and] . . . (a)(7) the action of the debtor in filing the petition was in good faith.").

Resolution of this appeal requires an exploration of Appellant's approach to his fee calculation in this specific case, and a broader examination of how fees are handled generally in Chapter 7 and Chapter 13 bankruptcy cases.

A.   Attorney's Fees in Bankruptcy Cases.

Appellant varied his rate and method of payment depending on the type of bankruptcy plan that his client filed.   (Dkt. No. 10, Appellant Br. at 4.)   The two payment

2

methods relevant to this appeal concern those for Chapter 7 plans and those for Chapter 13 plans.

Under a Chapter 7 bankruptcy plan, the bankruptcy trustee takes control of all of the debtor's non-exempt property, liquidates it, and distributes the proceeds equitably among the debtor's creditors.  11 U.S.C. § 725. Because Chapter 7 bankruptcy leaves the debtor with no assets, it is a remedy primarily utilized by debtors who have very limited assets, are in the most dire financial straits, and who seek immediate relief from creditors. After surrendering all non-exempt assets to the trustee, the debtor's remaining dischargeable debts are discharged, providing the debtor with a nearly immediate fresh start.

Appellant expects clients who are filing for Chapter 7 bankruptcy to pay their fee prior to the actual filing, because their debt to him would be discharged along with all others once they surrendered their assets to the trustee. There appears to be no contest that this is a standard and accepted, though perhaps not universal, practice employed by attorneys representing debtors in Chapter 7 proceedings.

Under a Chapter 13 plan, on the other hand, where a debtor retains some of his assets in exchange for repaying his creditors, the attorney becomes one of the creditors and may be paid over the three-to-five year period prescribed by

3

the repayment plan.  11 U.S.C. § 1322.  See In re Buck, 432
B.R. 13, 21 (Bankr. D. Mass. 2010) ("The purpose of Chapter
13 is to enable 'individual debtors to reorganize their
financial affairs . . . by extending due dates and servicing
their debts out of future income pursuant to a payment plan
crafted under the supervision of the bankruptcy court.'")
(quoting In re Young, 66 F.3d 376, 377 (1st Cir. 1995)).
Chapter 13 plans that include insignificant repayments to
creditors and primarily enable a debtor to pay his debt to
his attorney are referred to as "fee-only" Chapter 13 plans.

For a Chapter 7 plan, Appellant charged $1,850 in fees
plus $474.00 in costs, for a total of $2,324.00, all of
which had to be paid in advance of the filing of the plan.
For a Chapter 13 plan, Appellant charged an initial $500.00
retainer fee plus $3000.00 in fees and costs spread out over
the three-year period.  (B.R. 339.)

B.   In re Buck.

In re Buck concerned the bankruptcy plans that
Appellant filed on behalf of two debtors, an elderly widow
and her adult disabled daughter.  In re Buck, 432 B.R. 13
(Bankr. D. Mass. 2010).  Summarizing the case history, the
bankruptcy court noted that both debtors had filed Chapter
13 plans to which the trustee had objected on the grounds
"that from 'an economic and legal standpoint, it does not

4

appear to be in the Debtors' best interest to be in Chapter 13.'" Id. at 17.  The court agreed, writing that both of the debtors in the case "were ideal Chapter 7 candidates, having no previous filings, no valuable assets that could be property of the estate, and incomes well-below the state median."  Id. at 24.  Moreover, the court found, the Chapter 13 plans "were based on arguably unfeasible budgets."  Id. at 21.  The court concluded that "the Debtors' purposes in choosing Chapter 13" was "solely in order to pay their attorneys' fees" over a period of time rather than in a lump sum in advance.  Id. at 21.  The court criticized Appellant for employing Chapter 13 "as a payment collection and enhancement device."  Id. at 22 n.14.

Considering "fee-only" Chapter 13 plans generally, the bankruptcy court observed that the majority of courts have held that such plans fail to meet the requirement of good faith imposed by 11 U.S.C. §§ 1325(a)(3) and (7).  See id. (listing cases).  The court in Buck observed that, although the precise definition of "good faith" in bankruptcy proceedings might be somewhat elusive in borderline cases, the plans in that case "unquestionably fail[ed] to meet any fair interpretation of the term," where the debtors' decision to invoke Chapter 13 was premised solely on their inability to pay attorney's fees in advance despite the

benefits to them otherwise of a Chapter 7 filing.  Id. at
22.

Having so found, the court applied the lodestar
approach to determine reasonable compensation for Appellant
and found that "payment of compensation in any amount would
be an inappropriate reward."  Id. at 24.  See Boston & Maine
Corp. v. Moore, 776 F.2d 2, 7 (1st Cir. 1985) (noting that
fee-setting court must apply "lodestar, which is the number
of hours reasonably spent by each attorney multiplied by his
reasonable hourly rate").

C.   Debtor Wayne Eric Puffer and Appellant's Other Clients.

The Debtor in this case, a single father, had
approximately $14,000 in unsecured debt and no assets when
he sought representation from Appellant.  (B.R. 376.)  He
worked as a line cook and lived with his parents, his son,
his sister, and her two children.  After payment of his
monthly expenses, Debtor was left with $100.00 each month in
disposable income.  When Mr. Puffer came to him for
representation, Appellant presented him with two options,
either to file under Chapter 13 or Chapter 7.  The record is
clear that Mr. Puffer chose to file under Chapter 13,
because he lacked the funds to make the required advance fee
payment under Chapter 7, and because he wanted to get
bankruptcy protection to stop his creditors' harassment.

According to Debtor's affidavit, he opted for Chapter 13

> because I felt the need to begin the bankruptcy
> process as a result of constant creditor telephone
> calls and the indication that some of them may
> take me to court.  The stress was building because
> of these calls and I knew I needed to do something
> to stop them.  It is my belief that had I been
> required to save up for Chapter 7 fees and costs
> it would have taken me at the very least three
> months to do so.

(B.R. 377, Puffer Aff. ¶ 13.)

The Chapter 13 plan required Debtor to pay $100.00 per month to the trustee for thirty-six months with the bulk of the total, $2900.00, going to Appellant, $396.00 to the trustee, and a total of $300.00 to Debtor's other creditors. The bankruptcy court denied confirmation of Debtor's Chapter 13 plan on the grounds that Debtor had not demonstrated that his plan was filed in good faith.  The court ordered that Debtor file an amended Chapter 13 plan, convert the plan to a Chapter 7 plan, or risk outright dismissal.  On August 8, 2010, Debtor converted his plan to a Chapter 7 plan.  (B.R. 7.)

Prior to filing his fee application for this Debtor's case, Appellant gathered affidavits from fourteen similarly situated clients, all of whom swore that they had selected Chapter 13 bankruptcy because they preferred to pay a larger fee over a three-year period in order to retain Appellant's

services immediately with only a $500.00 up-front retainer.[1] (B.R. 157-210.)

### III. DISCUSSION

Appellant has appealed the bankruptcy court's denial of his fee application on three grounds: (1) the bankruptcy court abused its discretion in disallowing his attorney's fees and expenses and failing properly to employ the "lodestar" method to determine the reasonable fees; (2) the bankruptcy court erred in ruling that attorney fee-only Chapter 13 plans and petitions proposing such plans are, as a matter of law, filed in bad faith; and (3) the bankruptcy court improperly excluded an affidavit filed by attorney Paul LaRoche.  The court will address each argument in turn.

A.    Did the Bankruptcy Court Abuse its Discretion?

Both the Appellant's arguments and the response in opposition by the Appellee Chapter 13 Trustee have some merit.  As a result, the standard to be applied by this court in reviewing the bankruptcy judge's decision acquires pivotal importance.  A district court reviews the bankruptcy court's fee award only for mistake of law or abuse of

---

[1]    Appellant filed these affidavits with his fee application in Debtor's case, and they were also referenced by the court in In re Buck, which found "their credibility [to be] questionable at best, given that each is submitted by a person counseled by Attorney Berliner and each contains virtually identical language and structure."  In re Buck, 432 B.R. at 18 n.10.

discretion.  <u>Lopez v. Consejo de Titulares del Condominio</u>
<u>Carolina Ct. Apts.</u>, 405 B.R. 24, 30 (B.A.P. 1st Cir. 2009).

Before proceeding to examine whether an error of this
proportion occurred, a preliminary observation is required
to highlight one painful irony: Mr. Puffer's choice of the
Chapter 13 option, made supposedly to save time, in fact
delayed substantially the resolution of his case.  This fact
has relevance in weighing the fee award.  <u>See</u> <u>McMullen v.</u>
<u>Schultz</u>, 428 B.R. 4, 12 (Bankr. D. Mass. 2010) ("[I]n
assessing the reasonableness of a debtor's attorneys' fees
under the lodestar method, the amount at stake and the
results obtained are of paramount importance.").

Debtor, Mr. Puffer, signed a Chapter 13 retainer
agreement with Appellant on April 5, 2007.  (B.R. 379.)
Nearly one year later, on February 29, 2008, Appellant
finally filed Debtor's Chapter 13 plan.  (B.R. 2.)  More
than one year after that, on July 23, 2009, a Chapter 13
plan confirmation hearing was held, at which the bankruptcy
court took the plan under advisement and ordered briefs to
be filed by both parties regarding the propriety of "fee-
only" Chapter 13 plans.  (B.R. 3.)  Appellant sought four
extensions and eventually filed his brief on December 27,
2009, followed by a supplemental brief the following March.
Finally, on August 8, 2010, more than three years after he

signed the retainer agreement, Debtor voluntarily converted his Chapter 13 plan to a Chapter 7 plan.[2]  (B.R. 7.)

Given that the sole reason Debtor chose Chapter 13 over Chapter 7 was the three months needed to save funds to pay Appellant's Chapter 7 fee in advance, the three-year delay must be viewed as unconscionable.[3]  Notwithstanding Appellant's observation that the bankruptcy court "[c]ompletely ignored . . . the fact that the debtor was provided with legal services which ultimately led to the discharge of his debts," in fact, the legal services provided to Debtor, including the stratagem of invoking chapter 13, have served to delay by years such discharge, much to his detriment.  (Dkt. No. 10, App. Br. at 21.)

Against this backdrop, it cannot be said that the bankruptcy judge abused his discretion by failing to use the lodestar approach to the fee calculation for two reasons.

First, the court can properly infer that, in fact, the lodestar method was, to some extent, employed.  The

---

[2] Appellant has not suggested that the bankruptcy court's eventual refusal to confirm Debtor's Chapter 13 plan was error, and thus this court has no reason to doubt that the Chapter 13 plan did not satisfy the requirements laid out in 11 U.S.C. § 1325.

[3] Even if, as Appellant contends, Debtor's estimate of three months was "overly optimistic," there is no evidence that Debtor would have required three years to amass the requisite fee.  (Dkt. No. 10, Appellant's Br. at 28 n.21.)

bankruptcy court cited <u>In re Buck</u> and noted that it had considered it when making its ruling.  Since the court went through the lodestar analysis in <u>In re Buck</u>, this court can assume that the bankruptcy court's analysis as set forth there was employed here.

Second, and more importantly, given that the issue before the bankruptcy judge was the propriety of the Chapter 13 selection in the first place and the ultimate "fee only" plan, the typical lodestar mathematics had little relevance to the judge's analysis.  If the decision to use Chapter 13 resulted in a plan that was not in "good faith," the decision to decline to award any fees for the plan's formulation and presentation to the court could hardly be deemed an abuse of discretion or contrary to law.

The central question raised in this appeal, therefore, is not whether the judge went through the conventional lodestar arithmetic properly, but whether his decision to bar fees in this context entirely, based on the misuse of Chapter 13, was an error of law or an abuse of discretion. This is the issue the court will turn to now.

B.   <u>Attorney Fee-Only Chapter 13 Plans</u>.

Appellant contends that the bankruptcy court erred when it followed the majority of courts nationwide in finding that attorney fee-only Chapter 13 plans lack the good faith

11

required by § 1325(a)(3).  Upon <u>de novo</u> review of the
bankruptcy court's rulings of law, this court is unpersuaded
by Appellant's arguments both as they pertain to Debtor's
case specifically, and to the landscape of bankruptcy law
generally.  <u>See</u> <u>In re LaRoche</u>, 969 F.2d 1299, 1301 (1st Cir.
1992).  While sympathetic to Appellant's quandary –- how to
provide necessary representation to clients who are unable
to pay for his services -- the court can ignore neither the
sound rulings from bankruptcy courts nationwide nor the
facts of Debtor's case here.

The discussion must begin with the observation that
Appellant could identify only one bankruptcy court that has
upheld attorney fee-only Chapter 13 plans.[4]  <u>See</u> <u>In re
Elkins</u>, No. 09-09254-8-JRL, 2010 Bankr. LEXIS 1085, at *4
(E.D.N.C. Apr. 13, 2010) (noting a "tidal wave" of attorney
fee-only cases).  <u>But see</u> <u>In re Arlen</u>, No. 10-21980-DRD-13,
2011 Bankr. LEXIS 1638, at *10 (Bankr. W.D. Mo., May 3,
2011) ("These cases are little more than disguised Chapter 7
proceedings.  Utilizing Chapter 13 in this fashion blurs the

---

[4] Appellant's reliance on <u>In re Molina</u> is unavailing as
the court there explicitly noted that the debtor had no other
options available to her.  <u>See</u> <u>In Re Molina</u>, 420 B.R. 825, 827
(Bankr. D. N.M. 2009) (confirming Chapter 13 plan despite its
failure to provide any "meaningful payment to creditors"
because the single grandmother raising her young grandson had
previously filed for Chapter 13 bankruptcy and was thus
ineligible for Chapter 7).

distinctions between the two chapters and the various differences in their scope and purpose as reflected by the different applicable statutory provisions."); In re Paley, 390 B.R. 53, 59 (Bankr. N.D.N.Y. 2008) ("A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code."); In re Dicey, 312 B.R. 456, 460 (Bankr. D.N.H. 2004) ("Congress did not create Chapter 13 as a vehicle solely for the payment of attorney's fees."); In re Levine, 10 B.R. 168, 169 (Bankr. D. Mass. 1981) (observing that the "majority of bankruptcy cases that have quantifiedly interpreted the 'good faith' requirement of § 1325(a)(3) have concluded that there must be a meaningful or substantial payment under the plan" and listing cases).

Even putting aside the dearth of support for his position (which Appellant acknowledged at oral argument) and assuming arguendo that a fee-only Chapter 13 plan does not constitute a per se violation of the "good faith" requirement, Appellant's arguments still fall short. Appellant contends that the bankruptcy court erred because it failed to analyze whether Debtor's specific plan fit within the parameters of the concept of "good faith" as it has been explored in Keach v. Boyajian (In re Keach), 243 BR. 851, 856 (B.A.P. 1st Cir. 2000) (holding that good faith

requirement imposes "a standard of simple honesty") and
Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211
(B.A.P. 1st Cir. 2005) (broadening scope of the analysis to
employ a totality-of-the-circumstances test).  For several
reasons, however, the court must conclude that the
bankruptcy judge's ruling here was supported by well
accepted interpretations of what constitutes good faith in
this context.

First, Appellant's contention that the alternative to
the Chapter 13 plan "would have been to delay a Chapter 7
filing for a year or more while [Debtor saved his money] to
pay the increased fees and costs" (B.R. 150) is directly
contradicted by Debtor's affidavit, in which he testified
that he could have saved the requisite funds in only three
months.  (B.R. 377, Puffer Aff. ¶ 13.)

Next, Appellant argues that he presented Debtor with
his options, and Debtor himself made an informed choice as
to his preferred alternative.  To infer good faith on
Appellant's part from Debtor's "informed choice," however,
presupposes that this choice was permitted by the law.
Untrained clients often come to lawyers with preferred
courses of action that the law simply does not recognize.
The fact that a client "chooses" an approach that is not
legally permissible does not inoculate that decision from an

14

attack of bad faith.

Appellant's arguments in support of his own good faith
as a practitioner do not assist him.  Appellant observes
that Chapter 13 bankruptcies fail two-thirds of the time
and, thus, he was unlikely to be paid in full; that other
bankruptcy courts have upheld attorney fee-only Chapter 13
cases (namely, one court in the Eastern District of North
Carolina, as cited above); and that Debtor benefitted from
the automatic stay that immediately attached with the filing
of the Chapter 13 petition, pursuant to 11 U.S.C. § 362.

As to Appellant's first point, counsel had the option,
if receipt of the Chapter 13 fee was doubtful, to accept a
lower fee in advance to file under Chapter 7 immediately.
As to the second point, the case cited, In re Elkins, No.
09-09254-8-JRL, 2010 Bankr. LEXIS 1085 (E.D.N.C. Apr. 13,
2010), is simply an outlier, arising in a different context
and offering no reasoning behind its apparently blanket
acceptance of attorney fee-only Chapter 13 plans.  Finally,
as to Appellant's third point, the filing of a Chapter 7
petition would have given Mr. Puffer protection just as
quickly as Chapter 13 did.  11 U.S.C. § 362(c)(2)(C).

In his final argument, Appellant suggests that the
Bankruptcy Abuse Prevention and Consumer Protection Act of
2005 ("BAPCPA") backed him into a corner.  BAPCPA, he says,

"closed America's courthouse doors to a large number of
prospective Chapter 7 debtors, locking them in an
inescapable sweat box of financial despair while creditors
hound them mercilessly."  (Dkt. No. 10, App. Br. at 27.)
Appellant explains that BAPCPA's new regulations "caused a
50% increase in legal fees [for Chapter 7 plans] on top of
the doubling of costs . . . which left fee-paying Chapter 13
plans as the only means for many debtors to obtain
desperately needed relief in a timely manner."  (_Id._ at 28.)

The bankruptcy court's logic in _In re Buck_ casts doubt
on these arguments, and the bankruptcy court suggested
several possible ways to assist Debtors after BAPCPA.
Appellant could have reduced his rate, referred his clients
to a legal services organization, referred potential clients
to a less experienced attorney whose fee was lower, or
suggested that clients proceed with a Chapter 7 case _pro se_.
_In re Buck_, 432 B.R. at 24.

These may be partial, and undoubtedly often inadequate,
solutions to a fundamental problem: Debtors who need the
services of bankruptcy attorneys will often, almost _ex_
_hypothesis_, lack funds to pay them.  Bankruptcy counsel,
including Appellant here, deserve praise for choosing to
work in this difficult arena and for taking on the uncertain
cases of frequently desperate people.  The existence of risk

16

and difficulty with the Chapter 7 process after BAPCPA does
not, however, justify distorting the law to cobble together
an ersatz solution under Chapter 13.  In any event, the
bankruptcy judge certainly did not commit any error of law,
or abuse his discretion, in refusing to award any fee for
doing this.

The problem with fee-only chapter 13 plans was well
expressed by the bankruptcy judge in In re Buck.  If fee-
only plans were permitted, the trustee's sole purpose would
be to assure that the attorney were paid.  As the court
wrote, "[t]o require [the trustee] to administer cases
simply to make monthly payments to the Debtors' attorney and
no other creditor defies both logic and the intent of
Congress."  In re Buck, 432 B.R. at 21.

For all of these reasons, this court finds that the
bankruptcy court did not err in following the substantial
weight of case law adopting the bright-line rule that
attorney fee-only cases, including this one, fail to satisfy
the statutory good faith requirement.  His fee decision,
therefore, constituted neither legal error nor an abuse of
discretion.

C.   Paul LaRoche Affidavit.

Appellant submitted an affidavit from a fellow
practitioner, Attorney Paul A. LaRoche, attesting that many

17

clients for whom Chapter 7 would be an appropriate plan are unable to take advantage of it due to their inability to pay the attorney's fees.  (Dkt. No. 10, Ex. 3, LaRoche Aff. ¶ 5.)  The bankruptcy court allowed the trustee's motion to strike the affidavit because no evidence was taken in the case.  Appellant contends that this ruling was itself an abuse of discretion.

Because the bankruptcy court's holding concerned application of the law to specific debtors, not to Attorney LaRoche's clients, the bankruptcy court cannot be said to have abused its discretion in striking the affidavit.  See In Re PMC Mktg. Corp., 447 B.R. 71, at *2 (Bankr. D.P.R., 2011) (noting that evidentiary rulings are reviewed for abuse of discretion).  Equally importantly, the evidentiary material contained in the affidavit could not have altered the resulting ruling, since it was based on a matter of law. In Massachusetts, as in most jurisdictions, the consistent interpretation of the bankruptcy code is that confirmation of "a Chapter 13 plan which should more appropriately be a Chapter 7 case, contravenes the express provisions of Chapter 13 and its overall purpose of providing a structure for repayment of debt."  In re Ellis, 388 B.R. 456, 461 (Bankr. D. Mass. 2008).  The court will thus affirm the bankruptcy court's allowance of Appellee's motion to strike.

## IV.   CONCLUSION

For the foregoing reasons, the court hereby AFFIRMS the decision of the bankruptcy court (Dkt. No. 1).   This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge